# Garner v. City of Anniston

*Street Improvement Assessment.*

(Decided May 9, 1912.   Rehearing denied June 29, 1912.
59 South. 654.)

1. *Municipal Corporations; Street Improvement; Assessment; Jurisdiction.*—Under sections 1394-5, Code 1907, the circuit or other court of like jurisdiction to which an appeal is taken by the owner from an assessment for street improvement, may determine the existence and effect of any defects in the proceedings, and may also determine whether the assessment exceeds the special benefits.

2. *Same; Abatement of Proceedings.*—Where it appears that there is fundamental error in proceedings to assess property for street improvement, the proceedings should be abated.

3. *Same; Supplementary Proceedings.*—Where proceedings to assess property for street improvements are abated for fundamental error therein, and supplementary proceedings are commenced under section 1380, Code 1907, the city must take each step anew.

4. *Same, Necessity of Ordinance.*—In proceedings under section 1361-, Code 1907, to assess property for street improvement an ini-

[Garner v. City of Anniston.]

tial ordinance or resolution of some character, is essential, and indispensable.

5. *Same; Sufficiency of Ordinance.*—An ordinance providing that a street shall be paved with bitulithic pavements, vitrified brick, or other approved material, is not a compliance with the requirements of section 1361, Code 1907, because failing to describe the general character of the material to be used, and an assessment proceeding under such an ordinance should be abated on objection properly made.

6. *Same; Defect In Ordinance; Effect.*—The inadequacy of the preliminary ordinance does not render void an assessment by the city council or a judgment of the city court sustaining such assessment; and where a property owner merely objects to the amount of his assessment, and not to the preliminary proceedings, the circuit court or court of like jurisdiction to which an appeal is taken may properly proceed to assess the amount of the benefits conferred.

7. *Same; Proceedings.*—Where a city council acting pursuant to the provisions of section 1364, Code 1907, passes a resolution which differs fundamentally from the original resolution, this must be considered the commencement of a new proceeding, the statute requiring the prior steps to be taken anew.

8. *Same; Supplementary Proceeding.*—The provisions of section 1380, Code 1907, are within the law making powers of the Legislature, and hence, valid.

Certiorari to Court of Appeals.

City of Anniston brings certiorari to review the judgment of the Court of Appeals in the case of *Garner v. City of Anniston,* 2 Ala. App. 389; 56 South. 874, wherein the judgment of the City Court of Anniston overruling objections of R. E. Garner, to a municipal assessment was reversed and remanded. The judgment of the Court of Appeals is reversed, and the cause remanded to that court for further proceedings in conformity to this opinion.

WILLETT & WILLETT, and C. H. YOUNG, for appellant. Counsel discuss the power of the court to review by certiorari the proceedings of the Court of Appeal, but as that matter is not discussed in the opinion, it is not deemed necessary to here set it out. If Garner's intention is correct, then the assessment would be void,

and there would be nothing to support an appeal, and hence, the appeal would have to be dismissed.—*City of Decatur v. Brock,* 54 South. 209. The courts will look to the entire proceedings, and will gather therefrom everything that will give the necessary jurisdiction.— *Harton v. Town of Avondale,* 147 Ala. 458; *Hitchcock v. Galveston,* 96 U. S. 341. So, if the original resolution was indefinite and uncertain, the subsequent proceeding ratifying and confirming the same, and designating bitulithic pavements cured any defect, and constituted the whole proceedings valid.—Authorities next above. The transcript was sufficient as offered in evidence.—Sec. 1392, Code 1907. The provisions of section 1393-4, Code 1907, also show that appellant's contention along this particular line is not tenable.—*City of Decatur v. Brock, supra.* As to whether the improvements were in accordance with the contracts, the city council was the sole judge.—*City of Woodlawn v. Dunham,* 162 Ala. 565; sec. 1369, Code 1907. A property owner may object in the beginning to the manner of the improvement, and the cost of the assessment, but he cannot set up non-performance of the contract.— 38 N. E. 750; 47 N. E. 397; 59 N. E. 869; 29 N. J. L. 441. The city is not required to show the proportionate shares of the expense of the improvement as applied to appellant's property, the question being whether the assessment against the property exceeded the benefits derived.—*Harton v. Town of Avondale, supra.* In reference to the questions here presented consideration of the court is asked of the following cases, where the questions involved are learnedly discussed.—*French v. Barbour A. P. Co.,* 181 U. S. 324; *Parsons v. District of Columbia,* 170 U. S. 45; *City of Alton v. Foster,* 74 Ill. App. 511; s. c. 173 Ill. 587; Minn. 183; 187 Mass. 290; 50 Mich. 56; 50 N. W. 319; 125 Ind. 455. Objec-

tions to assessments for paving streets not made before the city council cannot be reviewed on appeal to either the Superior or the Supreme Court.—*Young v. City of Tacoma,* 71 Pac. 742; 36 Atl. 293; secs. 1381, 1394, Code 1907.

KNOX, ACKER, DIXON & STERNE, for appellee. This court is without authority to review by certiorari the judgments of the Court of Appeals.—Sec. 140, Const. 1901; Acts 1911, p. 94; secs. 1, 2, 3, 10 and 17; *People v. Richmond,* 26 Pac. 929, and cases cited; *Wheeler v. Northern Colo. Co.,* 11 Pac. 103; *Branson v. Studebaker,* 33 N. E. 98. The ordinance was not sufficient under section 1361, Code 1907, to authorize the proceedings undertaken, and hence, the proceedings will not support the judgment.—2 Page & Jones on Taxation by Assessment, secs. 775, 777, 856-7, 864; 106 Cal. 498; 128 Cal. 114; 202 Ill. 257; 158 Ill. 442; 77 Ind. 92; 82 Mo. App. 386; 43 N. W. 710; 70 N. E. 989; 10 Pac. 342; 37 Pac. 441; 19 Mich. 39; 92 N. W. 657. It is jurisdictional in character, and if the city council fails to acquire jurisdiction of the subject-matter, no waiver and no estoppel could confer jurisdiction.— *Wyatt v. Judge,* 7 Port. 37; *Little v. Fitts,* 33 Ala. 343; *Clark v. Rose,* 75 Ala. 129; *Henderson v. Hall,* 134 Ala. 505; *First Nat. Bank v. Dunn,* 102 Ala. 202. Jurisdiction is not be inferred from the mere exercise of it, but must affirmatively appear of record in proceedings of this nature.—*Martin v. Martin,* 55 South. 632; 5 Mayf. 590; see especially *Strout v. Portland,* 38 Pac. 127, and cases there cited; 36 Atl. 801; 52 N. E. 982; 72 N. E. 680. If jurisdiction does not exist an appeal by the owner is not a waiver of the lack of jurisdiction.—135 Cal. 178; 128 Cal. 373; 30 Pac. 593. Failure to specify the materials to be used or a failure to require with

the other requirements of the statute deprive the city council of jurisdiction, to make the assessment, and the acquiescence or inaction of the property owner will not have the effect of validating such proceeding.—46 N. E. 729; 47 N. E. 368; 50 N. E. 221; 20 Atl. 737.

SAYRE, J.—Certiorari to the Court of Appeals. Petitioner, the city of Anniston, complains of the ruling and opinion of the Court of Appeals as erroneous, in that it was there held that the initial resolution of the city council, preparatory to the paving of Tenth street and the assessment of a part of the cost thereof against lot 13, block 149, on the north side of the street, which said resolution, undertaking to comply with section 1361 of the Code, provided that the street should be paved with bitulithic pavement, vitrified brick, or other approved material, whereas said section provides that the initial ordinance or resolution in such proceedings shall describe "the general character of the materials to be used," was void, and the judgment had at the end of the proceeding, and on appeal from the assessment to the city court of Anniston, was also void and of no effect.

In our recent case of *Birmingham v. Wills,* 178 Ala. 198, 59 South. 173, we had occasion to consider the office of section 1381 of the Code, which undertakes to establish a legislative estoppel against property owners who, after due notice, fail to appear to contest the final assessment in proceedings of this character. The operation and effect of the section we held to be such as to relieve us in that case of the necessity of discriminating between those steps preliminary to the final assessment, which, in the absence of statutory estoppel, have been ordinarily considered necessary to the validity of the assessment, and those the omission or imper-

fect observance of which have been held for mere irregularities, not going to the validity of the proceeding and resultant assessment. In the case at hand, there had been no general waiver of the sort contemplated in that section 1381; the property owner appeared at the final assessment and urged certain objections. His objections having been overruled by the municipal council, and the assessment having been made final against him, the property owner took an appeal to the city court of Anniston. On such appeal the statute (Code, § 1394) provides that "the said cause may be tried on the record without other pleadings, and the court shall hear all the objections of the property owner or owners to said assessment and the amount thereof, and shall determine whether or not such assessment exceeds the increased value of such property by reason of the special benefits derived from the improvement, and shall render judgment accordingly;" and (section 1395) that, "if on the hearing of such appeal it shall appear that by reason of any technical irregularity or defect in the proceedings the assessment has not been properly made against the lot or parcel of land sought to be charged, the court may, nevertheless, on application of the city or town, upon satisfactory proof that expense has been incurred which is a proper charge against the lot or land in question, render judgment for the amount properly chargeable against said lot or land; but in such case the court shall make such order for the payment of the costs as it may deem proper." In view of their own language and the general scheme provided by these and related sections, we hold the provision to be that on appeal to the circuit or other court of like jurisdiction two issues may be tried: Whether errors or omissions, not waived by a failure to object before the council or municipal board, have intervened, and,

if so, with what effect; whether the assessment exceeds the special benefits derived by the property from the improvement.    If fundamental error be shown in the record, the proceeding, so far as it touches the interest or property of the party appealing, shall be abated or held for naught, in which case (section 1380) supplementary proceedings may be had, in order to supply or cure the defect.    We take the last-mentioned provision (section 1380) to mean that as to the party appealing a reassessment may be had, in which the council or municipal board must begin anew and retrace its steps.    The statute also intends that if there has been any irregularity or defect in the proceeding for assessment, merely technical, and not affecting the substantial rights of property owners, judgment on appeal must be rendered for the municipality for the amount of the assessment, not exceeding the special benefit conferred, and the court shall make such order for the payment of the costs as it may deem proper.    If no fundamental error be shown, the issue whether the amount of the assessment against the property owner exceeds the benefit conferred must be tried in the usual way of determining issues of fact.

In this view of the statute, it may become necessary, in a case where, as here, the complete statutory estoppel of section 1381 does not operate, to determine what errors or omissions in the proceedings preliminary to the process for final assessment are so fundamental as to require, on objection taken, an abatement or declaration of invalidity, and what are those technical errors or irregularities which ought not to lead to that result.    We think there can be no doubt that the requirement of an initial ordinance or resolution of some sort is indispensable.    Indeed, an ordinance or resolution sufficient to show at least a bona fide intention and ef-

[Garner v. City of Anniston.]

fort to exercise the authority conferred by the statute, though it may be seriously defective, is neecssary in any case. An improvement undertaken without an ordinance or resolution to evidence the exercise of the power conferred by the statute would be the private enterprise of the individuals composing the council or municipal board, and could not, by estoppel or otherwise, impose liability on the municipality, nor eventuate in a lien upon the property of attingent owners. Just what defects in an initial ordinance or resolution will demand an abatement of the proceeding, upon objection timed as the statute requires, may be in some cases a question of difficulty. The specific objection upon which the property owner now insists arises out of that part of the statute (section 1361) which requires that the initial ordinance shall describe the general character of the materials to be used. The purpose of this requirement, and of the provision for a subsequent publication of the ordinance and for the meeting of the council with property owners, is to give the latter an opportunity to participate in an advisory capacity in the final determination whether the improvement shall be undertaken, and, if so, of what materials it shall be made. The statute also confers upon property owners a qualified right of veto. To these ends, the information of property owners by the incorporation in the ordinance of a statement of the general character of the materials to be used is proper and necessary, so that no ordinance omitting such statement can survive an objection taken at the hearing for final assessment. It is obvious that the ordinance in question did not designate or describe any material. It did not in any respect limit the final choice, nor give notice of the material for or against which that choice would be exercised. By providing that there might be a choice of any ap-

proved material, it left the council as free in the selec-
tion of materials as if no material whatever had been
mentioned, and so, in that respect, was notice of noth-
ing. It was not, therefore, a compliance with the stat-
ute. And so the Court of Appeals held.

Section 1364 of the Code provides that at the first
meeting of the council and property owners the coun-
cil shall consider objections and protests, if any, "and
may confirm, amend, modify, or rescind the original
ordinance or resolution." In this case it appears that
the council, after hearing objections, adopted a resolu-
tion in language somewhat different from the original;
but, for reasons to be found stated in the opinion of
the Court of Appeals, this resolution must be held to
have merely confirmed the original therein referred to.
We may suggest that, if a resolution passed at that
stage of a proceeding differ fundamentally from the
original, it must be considered as the commencement
of a new proceeding, in the prosecution of which the
omission of any essential requirement of the statute,
made for the governance of original proceedings, will
be omitted at the peril of its abatement on the final
hearing for assessment; for otherwise property owners
would be deprived of their qualified right of veto. This
seems to be the meaning and effect of the statute.

In view of the provision that the council may, in the
event its proceeding is abated on account of any defect
in the notice of proceeding before or subsequent to the
notice of final assessment, commence a new proceeding
—the statute denominates it a "supplementary proceed-
ing"—for the assessment of the cost of an improvement
already completed; it may be that an objection going,
not to the amount of the assessment, but to the lack of
conformity to statutory requirements in the prelimi-
nary proceedings, will be of doubtful value to the prop-

erty owner. Indeed, we do not see that he can take anything by such objection, except the right, in the event of a new proceeding, to organize a veto by property owners on the chance that in the face of such veto the improvement may not be able to muster a vote of two-thirds of the council. The probability will always be that in the end he will be required to pay. But the authority of such provisions for a new or supplemental assessment has been generally recognized. In 2 Page & Jones on Taxation by Assessment, it is said, with citation of a great array of decided cases, that: "In many jurisdictions it is provided, either expressly or by fair implication from the language used by the Legislature, that, where an improvement has been constructed, and the public corporation has attempted to construct it at the cost of the owners of the property benefited thereby, but the assessment which has been levied has proved to be invalid, such public corporation shall have power to levy a second assessment to pay the cost of such public improvement, if not in excess of the benefits conferred upon the property owner thereby. These statutes are held to be valid; and where they are in force the power to levy assessments exists." Section 956. In *Seattle v. Kelleher,* 195 U. S. 351, 25 Sup. Ct. 44, 49 L. Ed. 232, the Supreme Court of the United States went so far as to uphold the constitutional validity of a statute providing that an additional or new assessment might be levied for that part of the cost of an improvement for which, when it was made, there was no statutory authority, and for which the municipality had determined in the beginning to pay by general taxation. The statute invoked by the city in this case, being within the competency of the lawmaking power, must be followed, so far as it can be understood, without regard to what we may think of its wisdom.

Apart from one idea, that of providing for a point at which the property owner shall be .concluded, its conception is not altogether logical nor its expression clear. Our effort has been to ascertain and follow the meaning of the statute as it has been written.

We are referred to *Ex parte Paducah,* 89 S. W. 302, *Emmert v. Elyria,* 74 Ohio St. 185, 78 N. E. 269, and *Jacksonville Ry. Co. v. Jacksonville,* 114 Ill. 562, 2 N. E. 478, as cases on all fours with case at bar, and as holding that a description of materials, such as was used in the ordinance in question, satisfied the requirements of statutes substantially identical with section 1361 of our Code. In Illinois the court held that an ordinance prescribing a ·pavement of brick, and describing its materials and manner of construction with particularity in all other respects, was not rendered void by the fact that it permitted the foundation to be laid in "cinders, ·sand, gravel or other materials equally suitable." We find no fault in the decision. In the Ohio case it appeared that the council had determined that the paving material should be asphalt, brick, or other material, as might thereafter be determined. The court, without citation of authority or notice of cases to the contrary, said, "This meets the requirement of the statute." The consideration which induced the Kentucky Court of Appeals to a ruling in line with the contention of the city of Anniston in the case at bar was thus stated by the court: "It is obviously good policy, and to the best interest of the public,. that ordinances of this nature should be so framed as to bring about competition in the bidding for such work." The weight of authority is to the contrary. A number of the cases are cited in the opinion of the Court of Appeals. Some valuable paving processes are patented; some paving materials of great value are in effect pro-

prietary. No doubt the legislative purpose was to permit municipalities to have the benefit at once of such processes and materials and of competition which an exact specification of some processes or some materials of particular origin or ownership would exclude. At the same time it was intended to give property owners an opportunity to intelligently advise and object. These purposes, which to some extent run counter to each other, are served, as well perhaps as such conflicting purposes could be, by the requirement of a description of the general character of the materials to be used, as (to state what we consider apt and adequate illustrations of the statutory purpose) that the proposed improvement is to be constructed of stone, or brick, or asphalt, or wood, or a combination of bituminous products and crushed stone, which makes what is commonly known as bitulithic pavement. The ordinance in question fails to meet the requirements of the statute thus reasonably construed, and the proceeding consequent upon it should have been abated on objection properly, however informally, brought to the notice of the council or municipal board at the hearing for final assessment, or on appeal in the city court.

The property owner in this case did object at the proper time and place; but the grounds of his objection, so far as they are made to appear, may be summarized in one proposition: That the assessment was in excess of the increased value of his property by reason of any special benefit conferred by the improvement. This made an issue of fact on which the property owner was entitled to be heard and to examine witnesses (Code, §§ 1382, 1383), which right he also had in the city court on appeal. Section 1394. There were other objections, as that the assessment was in violation of the Constitution and statutes of the state, or

[The State v. Still, Judge.]

that there was no statute authorizing the cost of the improvement to be assessed against the property; but these were either so vague or so patently untenable as not to challenge the attention of the assessing tribunal or the court on appeal. They may have been properly treated as raising no question of law or fact.

It results, in our opinion, that neither the assessment by the city council, nor the judgment of the city court, were void; and, further, that, no objection to the preliminary proceedings having been taken, the city court properly proceeded to an assessment of the amount of the benefit conferred by the improvement. In order that the Court of Appeals may consider those assignments of error which are directed to questions raised in respect of the proper ascertainment of the amount of the benefits conferred, the judgment of that court is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur.

SIMPSON, J., concurs in the conclusion. He holds that the initial ordinance shown by the record was a sufficient compliance with the statute.