(108 So. 32)

**CITY OF ALBANY v. SPRAGINS et al.**
(8 Div. 816.)

(Supreme Court of Alabama. March 18, 1926. Extended Opinion, April 22, 1926.)

1. **Municipal corporations** ⚖️511(1)—**Illegality in assessment for paving held proper to be litigated as provided by statute (Code 1923, §§ 2174–2237).**

Any irregularity or illegality in city's proceedings for assessment of owner's lots on account of street-paving improvements *held* proper to be presented and litigated as prescribed in Code 1923, §§ 2174–2237.

2. **Municipal corporations** ⚖️512(1).

Certiorari *held* proper to quash proceeding to assess lots for street improvements, if void on its face.

3. **Equity** ⚖️51(1)—**Alleged illegal proceedings by city to assess owner's lots for street-paving improvements held not to justify interference of court of equity to prevent multiplicity of suits because owner owned 28 lots, where he had an adequate remedy at law, and it did not appear that city threatened to harass owner by vexatious litigation.**

Alleged illegal proceedings to assess owner's lots for street-paving improvements *held* not to justify interference of equity for prevention of multiplicity of suits, in that owner owned 28 lots and would be compelled to defend as to each separately, though facts and law were same as to each, with appeals sep-

, arately taken in event of adverse rulings, where owner had an adequate and complete remedy at law, and it did not appear that city threatened or intended to harass owner by vexatious litigation.

**4. Equity ⊕51(1).**

To invoke equity to prevent multiplicity of suits, there .must exist a practical necessity to prevent vexatious litigation.

**5. Equity ⊕51(1).**

Court will not impute to public officials a litigious or vindicative spirit, or purpose needlessly to vex and harass citizen with lawsuits.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Bill in equity by R. E. Spragins and others against the City of Albany. From a decree for complainants, respondent appeals. Reversed and rendered.

G. O. Chenault, of Albany, for appellant.

A multiplicity of suits is not, considered alone, a source of equity jurisdiction, when one does not otherwise exist. Turner v. Mobile, 33 So. 132, 135 Ala. 73. Multiplicity does not mean multitude, and equity will not interfere where the object is merely to obtain a consolidation of actions: 10 R. C. L. 282; 1 High on Inj. (2d Ed.) § 12; Moses v. Mayor, etc., 52 Ala. 209; Decatur Land Co. v. New Decatur, 73 So. 509, 198 Ala. 293.

A. J. Harris, of Decatur, for appellees.

Where levy or enforcement of an illegal assessment would lead to a multiplicity of suits, equity will take jurisdiction, and enjoin the making of the assessment, or its enforcement, if made. Ogden v. Armstrong, 18 S. Ct. 98, 168 U. S. 237, 42 L. Ed. 444; Union Pac. v. Cheyenne, 5 S. Ct. 601, 113 U. S. 526, 28 L. Ed. 1098; 2 Paige & Jones on Assessments, 1423; 1 Joyce on Inj. § 520a; Turner v. Mobile, 33 So. 132, 135 Ala. 125. It is of no moment that the threatened or pending suits are between only two persons. Rucker v. T. C. I. Co., 58 So. 465, 176 Ala. 456; Garrison v. Memphis Ins. Co., 19 How. 312, 15 L. Ed. 656; Payne v. Spragins, 92 So. 466, 207 Ala. 264; Holland v. Fairbanks-Morse & Co., 51 So. 931, 166 Ala. 198; Decatur Land Co. v. New Decatur, 73 So. 509, 198 Ala. 293; 1 Pom. Eq. (3d Ed.) §§ 254, 260, 272.

GARDNER, J. The bill in this case was filed by appellees, joint owners of 28 lots in the city of Albany, seeking injunctive relief against the city from further proceedings in assessment against said lots on account of street-paving improvements. The application for temporary injunction was heard upon bill, answer, and affidavits offered, resulting in an order granting the injunction, from which the city prosecutes this appeal. The bill was filed September 26, 1925, after notice by pub-

lication had been given that the preliminary assessment roll was complete and on file in the office of the city clerk, and October 18, 1925, set as the date of hearing any objections or defenses.

Our statutory system affords ample opportunity for the interposition of objections or defenses by the property owner in such character of proceedings, including appeals from adverse rulings to the higher judicial tribunals. Article 33, c. 43, Code of 1923.

[1] It is conceded by counsel for complainants that the matters of irregularity or illegality were such as were proper to be presented and litigated in the manner provided by the statute. Garner v. City of Anniston, 59 So. 654, 178 Ala. 430; City of Birmingham v. Wills, 59 So. 173, 178 Ala. 198, Ann. Cas. 1915B, 746; Day v. City of Montgomery, 93 So. 609, 207 Ala. 644.

[2] If such a proceeding is void upon its face, common-law certiorari may be awarded to quash the same. N. C. & St. L. Ry. v. Town of Boaz, 106 So. 192, 213 Ala. 667.

[3] The equity of the bill rests, as insisted by complainants' counsel, and so held by the court below, upon the doctrine of the avoidance of a multiplicity of suits, and this upon the theory that, as complainants own 28 lots, they will be compelled to defend as to each separately, though the facts and the law are the same as to each, with appeals separately taken in the event of adverse rulings; there being no provision for a consolidation of the causes. The equity here sought to be invoked belongs to the second class of the doctrine to prevent a multiplicity of suits as denominated by the author in 1 Pomeroy, Equity Jurisprudence, § 245, where the dispute is between two individuals, and a number of suits are instituted or about to be instituted successively or simultaneously, all depending upon the same legal questions and similar issues of fact. Such a suit in equity was originally called a "bill of peace," the grounds and purposes of which are quoted in section 248 of Pomeroy, Equity Jurisprudence, supra, as follows:

"In many cases, the courts of ordinary jurisdiction admit, at least for a certain time, of repeated attempts to litigate the same question. To put an end to the oppression occasioned by the abuse of this privilege, the courts of equity have assumed a jurisdiction."

Actions of ejectment are given as illustrations of the abuse against which equity intervened by denying further litigation "after repeated trials and satisfactory determinations of the question." Speaking further to this particular phase of the equitable doctrine here considered, the author, in section 254, says:

"In the second branch of the same class the single defendant has brought a number of simultaneous actions at law against the plaintiff,

all depending upon similar facts and circumstances, and involving the same legal questions, so that the decision of one would virtually be a decision of all the others. A court of equity may then interfere and restrain the prosecution of these actions, so that the determination of all the matters at issue between the two parties may be brought within the scope of one judicial proceeding and one decree, and a multiplicity of suits may thereby be prevented. It must be admitted that this exercise of the equitable jurisdiction is somewhat extraordinary, since the rights and interests involved are wholly legal, and the substantial relief given by the court is also purely legal. It may be assumed, therefore, that a court of equity will not exercise jurisdiction on this particular ground, unless its interference is clearly necessary to promote the ends of justice, and to shield the plaintiff from a litigation which is evidently vexatious. It should be carefully observed that a court of equity does not interfere in this class of cases to restrain absolutely and completely any and all trials and decisions of the questions presented by the pending actions at law; it only intervenes to prevent the repeated or numerous trials, and to bring the whole within the scope and effect of one judicial investigation and decision."

We know of no analogous case in our decisions to that here considered, but the general principles as above noted are fully recognized in Moses v. Mayor, etc., of Mobile, 52 Ala. 198. In Roanoke Guano Co. v. Saunders, 56 So. 198, 199, 173 Ala. 347, 349, 350 (35 L. R. A. [N. S.] 491), is the following language here pertinent:

"It has been stated by this court that it has never undertaken to define the jurisdiction of equity to prevent a multiplicity of suits, nor even to lay down the general principles governing the several categories of cases in which that jurisdiction may be invoked, but this court has evinced an inclination toward confining this jurisdiction to a narrow field, in order to conserve and preserve the right of trial by jury. Turner v. Mobile, 33 So. 132, 135 Ala. 124 [73], and cases there cited. Bills of this character are called bills in the nature of bills of peace, to quiet the rights of parties and to put an end to further litigation."

This authority also recognizes that "multiplicity of suits does not mean multitude of suits." See, also, 10 R. C. L. p. 283.

Viewed in the light of the origin of this equitable doctrine and the principles recognized in the foregoing authorities, we are of the opinion complainants' case is not brought within its influence. From a practical standpoint, these proceedings may be considered suits instituted by the city, however, as only in consequence of the statute, and give no indication whatever of any vexatious litigation on the part of the city. Reduced to its last analysis, the equitable doctrine in the instant case must rest upon the multitude of suits occasioned merely and solely on account of complainants' ownership of several lots, 28 in number.

[4] It would result as a necessary, logical conclusion that the equity of the bill must depend upon the number of the lots owned by complainants. This alone could not be considered sufficient upon which to rest so valuable an equitable principle. For its interposition there must exist a practical necessity to prevent vexatious litigation. In its very origin such a suit was called a "bill of peace." "Suits do not become of equitable cognizance because of their number merely." Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654, quoted in Turner v. City of Mobile, 33 So. 132, 135 Ala. 73.

[5] As previously stated, there is nothing here presented indicating that the city threatens or intends to harass complainants by vexatious litigation, and, as said in Pacific Express Co. v. Seibert (C. C.) 44 F. 310, the court will not impute to these public officials "a litigious or vindictive spirit, or a purpose needlessly to vex and harass the citizen with lawsuits." And in Boise, etc., Water Co. v. Boise City, 29 S. Ct. 426, 213 U. S. 276, 53 L. Ed. 796, the following expression:

"Where the multiplicity of suits to be feared consists in repetitions of suits by the same person against the plaintiff for causes of action arising out of the same facts and legal principles, a court of equity ought not to interfere upon that ground, unless it is clearly necessary to protect the plaintiff from continued and vexatious litigation."

The objections to the proceedings present legal questions, the determination of which in one case would control as to the others. A somewhat similar situation was considered by the Supreme Court of Massachusetts in Fellows v. Spaulding, 6 N. E. 548, 141 Mass. 89, and disposed of from a practical standpoint in the following language:

"The same questions of law are raised in each case, and there is no reason why one suit, in the usual course of proceedings, * * * the other being continued to abide the result, should not settle all the cases; * * * practically the whole controversy can be conveniently settled in the forum to which it belongs. We see no reason for restraining the defendants, by injunction, from pursuing the remedy which the statutes provide for such cases."

We consider the above-quoted language applicable to the instant case. Here the remedy at law is plain and adequate, and the only embarrassment complained of arises in reality from the sole fact of ownership of a number of lots. If this alone were sufficient, then the mere ownership of a number of lots would authorize the owner to have a removal of the cause from the law court where the questions of fact are to be tried by a jury, into the equity court, triable as the ordinary equity causes.

Upon the question of jurisdiction of courts of equity to prevent a multiplicity of suits, there exists much conflict of judicial opinion, and the extent of this jurisdiction has never been defined by this court. Turner v. Mobile,

supra. A review of the numerous authorities on the subject would serve no useful purpose. They are cited and reviewed in Pomeroy on Equity Jurisprudence, supra. We have examined those cited by counsel for appellee, among them Union Pacific Ry. Co. v. City of Cheyenne, 5 S. Ct. 601, 113 U. S. 516, 28 L. Ed. 1098, which we do not consider analogous and is here distinguishable.

In the third class treated by Mr. Pomeroy (volume 1, § 260), the author places assessment for local improvements where separate owners of the lots affected by such improvements and upon which liens are declared have been granted injunctive relief against the enforcement and collection, and the assessment set aside on account of its illegality, in order to prevent a multiplicity of suits. General reference is made to this portion of the author's statement in Turner v. Mobile, supra. In the cases referred to by the learned author, it appears the remedy at law was considered inadequate, and in discussing these legal remedies it is said (section 260, supra):

"To restrict him to such imperfect remedy would, in most instances, be a substantial denial of justice."

In referring to other cases restricting the rule first above noted, the author points out (1 Pomeroy, Eq. Jur. § 265) that these cases hold that the mere fact of illegality of the assessment of the tax and of its affecting numerous taxpayers in the same manner, do not furnish the ground for equitable interference, citing in the note thereto Strenna v. City of Montgomery, 5 So. 115, 86 Ala. 340, which case was one involving local improvement assessment, wherein the court used the following language here pertinent:

"But, whether this is so or not, we hold that all the objections which have been urged before us should have been raised on the trial and proceedings before the recorder; and, if necessary, an appeal should have been taken. The defenses being all legal in form, and the defendant having had ample opportunity to make them, which he neglected to do, he has no standing in a chancery court."

So in the instant case, as previously herein stated, the remedy at law is adequate and complete. Our statute affords ample opportunity for complainants in the proceedings at law to present every character of objection here urged. Therefore the case made by the bill still remains as one dependent for its equity upon the fact that complainants are owners of 28 lots, and the anticipated inconvenience occasioned by a litigation as to the several lots, which we have hereinabove discussed. A consideration, therefore, of the third class discussed by Mr. Pomeroy adds nothing to the equity of the bill.

Considering the origin of this equitable doctrine and the principle upon which it rests, we are clear to the view that a case is not here made out justifying the interference of a court of equity for the prevention of a multiplicity of suits.

It results as our conclusion that there was error in the order directing the issuance of the temporary injunction. That decretal order will be reversed, and one here rendered denying the preliminary injunction and dissolving the writ heretofore issued.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.